IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ALPHONSO T. WARD                                                                    PLAINTIFF

VS.                                                         CIVIL ACTION NO.  5:11cv65-FKB

UNKNOWN HILL, UNKNOWN VANCE,                                      DEFENDANTS
UNKNOWN STEVENSON, AND ERNESTEIN JACKSON

MEMORANDUM OPINION AND ORDER

The Court held an omnibus hearing[1] in this matter, at which time it conferred with Plaintiff and counsel for Defendants in this suit founded upon 42 U.S.C. § 1983. At that hearing, the parties consented to have a United States Magistrate Judge conduct any and all further proceedings in the case and order the entry of final judgment, and the District Judge subsequently entered an order of reference. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Ward is proceeding in this matter *in forma pauperis* and *pro se*.

Before the Court are Defendants' Motion for Summary Judgment [51] and related filings by the parties [52, 54, 55, 56]. For the reasons explained in this Memorandum Opinion and Order, the Motion for Summary Judgment is granted.

Plaintiff Ward has filed a Motion for Ruling [50], which is hereby granted to the extent set forth in this Memorandum Opinion and Order. Ward has also filed a Motion for Appointment of Counsel [57], which is hereby denied for the same reasons Ward's previous requests to appoint counsel were denied. *See* Orders [35, 49].

I.  Plaintiff's Claims

Plaintiff is a convicted inmate who, at all times relevant to the claims in this action, was

---

[1] *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

housed at Wilkinson County Correctional Facility ("WCCF"). At the time of the events alleged in the complaint, Defendants were employees of the WCCF. As named in the Complaint, Defendants are C.O. Hill, C.O. Jackson, Nurse Vance, and Nurse Stevenson. In sum, Ward alleges that Defendants failed to give him adequate medical attention in relation to a self-inflicted, accidental wound.

According to the Complaint, on November 29 or 30, 2010, Ward had laser surgery to remove a wart in his genital area. [1] at 4. Ward alleges that on or about December 2, 2010, around 3:00 a.m., while using the toilet, he accidentally injured himself in his genital area where the surgery had been performed. *Id.* The injury to his genital area caused him to bleed "real bad." *Id.* He pressed the intercom for help, but the officer on duty, Defendant Hill, did not answer his call. A floor officer, Officer Jones, came to Ward's aid and informed Defendant Hill of Ward's emergency needs, to which Defendant Hill did not respond. *Id.* at 6. Ward alleges that he began kicking his cell door to get help, and after about five to ten minutes, Defendant Hill called Unit Manager McDonald and Defendant Nurse Vance. *Id.*

When Unit Manager McDonald and Defendant Nurse Vance arrived, they observed that Ward was bleeding. *Id.* Defendant Nurse Vance gave Ward a gauze pad to stop the bleeding. *Id.* Plaintiff relates that Unit Manager McDonald advised Vance to make sure the pad was placed properly to stop the bleeding. *Id.* Ward alleges that he repeatedly asked Nurse Vance to take him to "medical," but that she refused his request and informed him that she would let him see a doctor at 8:00 a.m. *Id.*

Plaintiff alleges that about twenty minutes after McDonald and Vance left, the gauze pad was blood-soaked and unusable. *Id.* He alleges that he pressed the intercom and asked

Defendant Defendant Hill for help, but Hill would not answer the intercom. *Id.* at 7. Ward alleges that when floor Officer Jones came back onto the zone, Ward informed Jones of the emergency. *Id.* Immediately, Jones directly called Unit Manager McDonald, who returned to Ward's cell. *Id.* Ward informed McDonald that Hill had not answered his requests for help through the intercom. *Id.* At that time, McDonald went to medical and obtained more gauze pads for Ward. *Id.*

Ward was taken to the doctor at 8:00 a.m., but in his complaint he does not clarify who took him or the condition of his bleeding. A Nurse Burkhalter[2] examined him and allegedly said that Defendant Nurse Vance should have brought him to medical or to a hospital immediately when he injured himself because he could have bled to death. *Id.* at 7. Ward alleges that between 8:30 a.m. and 9:00 a.m., Nurse Burkhalter cleaned and disinfected the injured area, as well as applied eight stitches to the wound. *Id.*

As for follow-up care, Ward alleges that Nurse Burkhalter cleaned and dressed the wound on December 3, 2010. *Id.* at 8. He also alleges that Nurse Burkhalter directed him to get a shower. *Id.* However, Ward alleges that over the next few days, Defendant Nurse Stevenson would not allow him to go to medical to have his wound cleaned and dressed. *Id.* In addition, he alleges that Defendant Jackson, a tower officer, denied his requests to shower. *Id.* at 8-9. On December 6, 2010, while inmates were out of their cells, Ward went into the "sallyport" to ask Defendant Jackson to call medical, however, at that time Defendant Jackson "wrote [him] up for

---

[2]During the omnibus hearing, Ward referred to the nurse on duty as "Burkhalter." However, in Ward's complaint he referred to this nurse as "Brukbalger." The medical records confirm that the correct spelling of the nurse's name is "Burkhalter." Therefore, the Court will refer to her by her correct name, not Plaintiff's phonetic spelling of her name.

being in the sallyport," despite being aware of his medical needs. *Id.* at 9. Ward alleges that he was able to go to medical to have his wound dressed on December 6, and that he was allowed to shower some time later that day. *Id.* He also alleges that Defendants Jackson and Hill threatened him after he filed his grievance forms. *Id.*

Plaintiff seeks 2.2 million dollars for punitive damages, emotional distress, nominal damages, and actual damages. *Id.* at 4. Plaintiff also seeks to have Defendants discharged from their positions, *Id.* at 5, and to be moved from WCCF. *Id.* at 9.[3]

Ward was given an opportunity to elaborate upon his claims at the omnibus hearing held in this matter. The Court construes his testimony as a part of his complaint and notes that Ward shed new light on some details about his injury and the subsequent events. At the hearing, Ward related that his accidental injury in the early morning hours of December 2, 2010, was caused by a knife that he had hidden in his pants. [51-1] at 7. He testified that when he jumped on his bed, his knife cut him in the same area in which he had recently had surgery. *Id.*[4] He alleged that Officer Hill neglected him when she refused to answer the intercom. *Id.* at 19. Ward clarified that the length of time from his injury until Hill called Unit Manager McDonald was about twenty-five to thirty minutes. *Id.* at 9. Ward further alleged that Nurse Vance was negligent when she did not take him immediately to the emergency room, but instead made him wait to see a doctor at 8:00 a.m. in the facility. *Id.* at 10, 18. When he went to the medical area around 8:00 a.m., Nurse Burkhalter, assisted by Nurses Brown, Socier, and Thomas, applied 8 stitches to the

---

[3]According to the docket sheet of the case, Plaintiff is currently incarcerated at South Mississippi Correctional Institution, Leakesville, Mississippi.

[4]Ward's medical records make clear that he sustained two lacerations to the left side of his penis. [51-3] at 3.

wound, which stopped the bleeding. *Id.* at 12, 21. Ward testified that the wound became infected because medical personnel, such as Nurse Stephenson, refused to dress the wound. *Id.* at 13, 18. However, Ward acknowledged that Nurse Burkhalter and Nurse Socier changed his bandages every two to three days in consultation with a doctor. *Id.* at 13, 22, 23. These nurses also gave him antibiotics and treated him with other topical medication, and the wound healed within a month. *Id.* at 13, 21-23. He also testified that a doctor told him that he did not need to go to an emergency room, but instead nurses applied medications to his skin to help heal it. *Id.* at 22-23. Finally, when questioned by defense counsel at the omnibus hearing, Ward admitted that no doctor or nurse had told him that any problems he has with urination are caused by the lapse in time between his knife injury at 3:00 a.m. on December 2, 2010, and when Nurse Burkhalter gave him medical attention around 8:00 a.m. that morning. *Id.* at 25.

## II.  Evaluation Using Relevant Standards

The Court has considered Ward's complaint, his testimony at the omnibus hearing, and all other medical and other records submitted by the parties. A review of the relevant law will aid in the consideration of Plaintiff's claims.

Rule 56 of the Federal Rules of Civil Procedure states, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999)(quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), *cert. denied*, 119 S.Ct. 618 (1998)). Issues of fact are material if "resolution of the issues might affect the

outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(emphasis omitted). Moreover, the non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. Little, 37 F.3d at 1075. In other words, "[i]f a motion for summary judgment is properly supported, the opposing party 'may not rely merely on allegations or denials in its own pleadings' but must, in . . . response, 'set out specific facts showing a genuine issue for trial.'" *Lockamy v. Rodriguez*, 402 F3d. Appx. 950, 951 (5th Cir. 2010)(citations omitted).

Furthermore, the case may be dismissed if Plaintiff fails to articulate constitutionally cognizable claims against the named Defendants. *See Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1995)(citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991))("if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s] [are] entitled to dismissal on that basis."); *see also* 28 U.S.C. § 1915(e)(2)(B)(ii)("the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted.").

The standards governing cases in which a plaintiff alleges deliberate indifference to serious medical needs are well established. "In order to show that his medical care violated the Eighth Amendment, [the plaintiff] must allege that prison officials were deliberately indifferent to his serious medical needs. Deliberate indifference encompasses only unnecessary and wanton

infliction of pain repugnant to the conscience of mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997)(citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  Although he may disagree with the treatment he has received, "an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992).  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).  Moreover, an allegation of negligence will not support a claim under 42 U.S.C. §1983.  *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995).

> This Court has addressed the issue of delayed medical care, stating
>
> To state a claim for a civil rights violation resulting from delayed medical attention, a plaintiff must demonstrate that the injured party suffered substantial harm resulting from the delay.  "In all but the simple and routine cases. . . it is necessary to establish medical causation by expert testimony."

*Campbell v. McMillin*, 83 F. Supp.2d 761 (S.D. Miss. 2000)(J. Barbour).  A sister court has elaborated on the "deliberate indifference" standard for evaluating denial of medical care claims, as follows:

> In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment ... whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care...." *Estelle v. Gamble*, 429 U.S. 97, 104-105; *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may knowledge of substantial risk of serious harm be

> inferred by a court from the obviousness of the substantial risk. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).  In cases such as the one at bar, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F.Supp.2d 761 (S.D. Miss. 2000).  A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

*Carrothers v. Kelly*, 2007 WL 1810666 (N.D. Miss.)(J. Mills)(Civil Action No. 4:05cv80-M-A June 19, 2007).

### III.  Discussion

Having reviewed the filings of record and considered Plaintiff's testimony at the omnibus hearing, the Court finds that Plaintiff's claims against all defendants should be dismissed for their failure to rise to the level of a constitutional violation.  Accordingly, Defendants are entitled to summary judgment.  Although it is unfortunate that Plaintiff suffered two cuts on his penis from his own knife, Defendants' medical treatment in response to Plaintiff's injury did not rise to the level of a constitutional violation.  A review of the medical care given to Plaintiff demonstrates that Defendants did not show deliberate indifference to his serious medical needs.

While Defendant Hill did not immediately respond directly to Ward's 3:00 a.m. calls for help, Officer Jones responded within minutes and checked on him.  Ward admitted that Unit Manager McDonald and Nurse Vance came to his aid within twenty-five to thirty minutes of his injury, after Defendant Hill had summoned them.  Ward alleges that Nurse Vance's initial

application of a gauze lasted only about twenty minutes.[5] At Ward's request, Officer Jones and Unit Manager McDonald promptly examined him again, and McDonald obtained additional gauze pads for Ward's wound. A few hours after he injured himself, or around 8:00 a.m., Plaintiff was transported to the medical infirmary at the facility. At that time, nurses examined him, cleaned and medicated his wound, and administered stitches. Although the initial response was delayed by about thirty minutes, the officials' response to his injury fails to demonstrate deliberate indifference. Furthermore, Jones and McDonald contained his bleeding and ensured that he received proper medical attention, including ten stitches,[6] when the clinic opened at 8:00 a.m.

As to his follow-up care, Ward alleges that the wound became infected, and that he was denied access to showers by Nurse Stevenson on December 3, 4, and 5. However, he also testified that his bandages were changed every two to three days, his care was monitored by a doctor, and he was given antibiotics and a topical medication. He also testified that after an initial delay of a couple days, he was allowed to go to medical and to shower on December 6. He did not complain in his complaint or at the omnibus hearing that he was denied access to showers on other dates. At the omnibus hearing, he testified that his wound healed within about a month.

The nurse's notes further confirm that Defendants were not deliberately indifferent to

---

[5] The Court notes that according to the medical records, [51-3] at 4, Ward told Vance that he was bleeding where the doctor had removed warts from his penis a few days earlier, not because of a self-inflicted knife wound in the same general area. The medical records provide that the doctor removed three penile warts on November 22, 2010. *Id.*

[6] Medical records indicate that nurses administered ten stitches, not eight as Ward alleges. [51-3] at 3.

his serious medical needs. The notes regarding Ward's initial visit to the clinic, recorded at 9:20 a.m. on December 2, 2010, state that the nurse saw Ward in the clinic for two lacerations on his penis. [51-3] at 3. Sutures, xylocaine, and a total of ten stitches were applied. *Id.* The records show that he was seen in the clinic on December 3, 6, 8, and 9 for follow-up care. *Id.* at 1-2. On December 9, the Nurse Burkhalter noted that he should return to the clinic as needed for follow-up care. *Id.* at 1. The doctor examined him on December 27 and noted that the wound was "well-healed." *Id.*

Although Ward complained at the omnibus hearing that he still has some problems with urination, he admitted that no doctor or nurse had told him that his urination problems were caused by the lapse in time between his self-inflicted injury and his treatment by the nurses a few hours later.[7] Although the medical care may not have been to Plaintiff's liking, it does not demonstrate deliberate indifference. As stated previously, even though Ward may disagree with the treatment he has received, "an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim." *Martinez*, 977 F.2d at 423. Accordingly, as supported by the medical records, Defendants are entitled to summary judgment as to Ward's delay in medical treatment and denial of medical treatment claims.

At the omnibus hearing, Ward clarified his claims against other defendants. Plaintiff's claims against Officer Hill regarding the intercom amount to, at most, negligence, and, in any

---

[7]Ward complains in an improper surrebuttal [56] that the inadequate medical care he received will prevent him from having children in the future. Ward fails to present medical evidence to support the claim that a delay in care or in adequate medical care caused this newly alleged condition. Regardless of Ward's new claim of injury, the Court finds that Ward has no cognizable liability claim against Defendants under 42 U.S.C. § 1983 for the reasons set forth in this opinion.

event, other officers quickly responded to his requests for help. Ward also made claims of negligence against Nurse Vance because she allegedly should have sent him to the emergency room immediately after his injury. Plaintiff asserted that Nurse Stevenson should have changed his bandages and dressings more often and should have allowed him to shower December 3 to 5, 2010. Plaintiff also alleged that Defendant Jackson failed to answer the intercom on December 6, 2010, when he asked for follow-up care. These claims amount to nothing more than claims of negligence, and an allegation of negligence will not support a claim under 42 U.S.C. §1983. *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995). Accordingly, these claims fail to rise to the level of a constitutional violation and are hereby dismissed.

Furthermore, as discussed above, even if Plaintiff alleges that these actions by Vance, Stevenson, and Jackson were intentional, they fail to rise to the level of a constitutional violation. Plaintiff admits that he received gauzes to stop the bleeding within minutes of the injury; he admits that he received medical care, including stitches, within a few hours of the injury; and he admits that another nurse changed his bandages, cleaned his wounds, and gave him antibiotics on a regular schedule, all with consultation and supervision by a doctor. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart*, 174 F.3d at 534 Accordingly, Ward's claims of negligence and inadequate medical care against Vance, Stevenson, and Jackson fail to rise to the level of constitutional violations, and are hereby dismissed.

Finally, Ward makes other vague claims against Defendants Hill and Jackson. Without alleging specific facts in his complaint, Ward alleges that after he filed his grievances regarding

-11-

these incidents, Hill and Jackson constantly threatened him. He alleges that they fraternized with known prison gang members to have bodily harm done to him.

These claims against Hill and Jackson fail on several bases. Ward failed, in either his complaint or at the omnibus hearing, to offer any specific facts to support these claims. Vague, conclusory allegations by the plaintiff do not meet the standard required to state a claim under 42 U.S.C. § 1983. *See Mills v. Criminal District Court #3*, 837 F.2d 677, 678 (5th Cir. 1988). Moreover, Ward has failed to exhaust his administrative remedies as to these claims, and Defendants have also moved for summary judgment on this basis. The United States Supreme Court has held that the PLRA's exhaustion requirement is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *See Porter v. Nussle*, 122 S.Ct. 983 (2002); *see also Booth v. Churner*, 532 U.S. 731, 739 (2001). Finally, allegations of threats fail to rise to the level of a constitutional violation. "It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)(citing *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993)). Moreover, Plaintiff does not allege that he suffered any physical injury as a result of alleged threats by Hill or Jackson. Accordingly, the foregoing claims fail to rise to the level of constitutional violations; Defendants are entitled to summary judgment on these claims; and the claims are hereby dismissed.

## IV. Conclusion

Thus, for the reasons explained above, the Court finds that Plaintiff's claims against Defendants fail to rise to the level of a constitutional violation. 28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly, summary judgment is hereby granted in favor of all Defendants, and all of Ward's claims against all Defendants are dismissed with prejudice. A separate judgment will be entered pursuant to Fed. R. Civ. P. 58.

SO ORDERED, this the 2nd day of September, 2014.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE